UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ISAAC MORALES,

                                                     Plaintiff,

       vs.                                                                           9:06-CV-15
                                                                                           (TJM/GJD)
SUPERINTENDENT R. WOODS, et al.,

                                                    Defendants.
_____

ISAAC MORALES
1654 Grand Avenue, 2d Floor
Bronx, New York 10453
Plaintiff *pro se*

Office of the New York State Attorney General        Gerald J. Rock, Esq.
The Capitol                                                               Asst. Attorney General
Albany, New York 12224

**Hon. Thomas J. McAvoy, Senior United States District Judge**

## MEMORANDUM DECISION and ORDER

      Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that defendants failed to protect him from assault, violated his right to due process, and retaliated against him for filing grievances. (Dkt. No. 1). Plaintiff seeks declaratory, injunctive,[1] and substantial monetary relief. Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56.[2] (Dkt. No. 45). Plaintiff has responded in opposition to defendants' motion. (Dkt. No. 48). For the following reasons, this court agrees with defendants and will dismiss the complaint in its entirety.

---

      [1] The court notes that plaintiff has been released from prison. Plaintiff's Deposition Transcript (DT) at 57. Any claims for injunctive relief have been rendered moot by plaintiff's release. *Gillard v. Burge*, 9:03-CV-1537, 2006 U.S. Dist. LEXIS 59444, *3 (N.D.N.Y. Aug. 26, 2006)(citing *Hallett v. New York State Dep't of Correctional Services*, 109 F. Supp.2d 190, 196 (S.D.N.Y. 2000)).

      [2] The parties are advised that the referral to the Magistrate Judge as provided for under Local Rule NDNY 72.3 has been rescinded. Therefore, any appeal taken from this Order will be taken to the Court of Appeals for the Second Circuit.

DISCUSSION

1. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*.

2. **Facts**

Plaintiff alleges that on October 4, 2005, while he was incarcerated at Upstate Correctional Facility, he was "attacked suddenly" by Manny Davis, an inmate who was being transferred to another facility. Complaint ¶ 17. Plaintiff speculates that inmate Davis attacked plaintiff because Davis was unhappy with the transfer and believed that he could avoid transfer by starting a fight. *Id*. Plaintiff claims that defendant Brown witnessed the attack, but did not respond quickly to assist plaintiff. Complaint ¶ 18. Plaintiff states that the videotape of the incident will show that defendant Brown was "standing around" before he intervened in the altercation. *Id*.

Both plaintiff and inmate Davis were charged with disciplinary rule violations. Plaintiff was charged with failing to obey a direct order, creating a disturbance, fighting, and violent conduct. *Id*. ¶ 21. Defendant Vann conducted plaintiff's disciplinary hearing, and plaintiff claims that defendant Vann did not complete the hearing in a timely manner, in violation of New York State regulations

governing disciplinary hearing procedures. Defendant Vann found plaintiff guilty of the misbehavior and sentenced him to two months in the Special Housing Unit (SHU) and a two month loss of various privileges. Vann Decl. Ex. G. Defendant Vann also recommended a loss of two months of good time. *Id.* Plaintiff claims that there was insufficient evidence to find him guilty, and defendant Vann was retaliating against plaintiff for writing letters to her superiors, complaining about the conduct of the disciplinary hearing. Complaint ¶¶ 25-26. Plaintiff also claims that defendant Vann was biased against plaintiff because she also conducted Davis's disciplinary hearing. *Id.* ¶¶ 30-31. On appeal, Donald Selsky, the Director of Special Housing and Inmate Disciplinary Program dismissed one of the charges, but allowed the penalties to stand. Vann Decl. Ex. H.

Plaintiff also claims that on November 30, 2005, while plaintiff was still in SHU as a result of defendant Vann's disciplinary determination, he was attacked by inmate Rosado. *Id.* ¶¶ 44-47. Plaintiff states that two corrections officers came to plaintiff's assistance and prevented plaintiff from being seriously injured. *Id.* ¶ 47. Another misbehavior report was written against plaintiff, but was dismissed because plaintiff was released from incarceration. Compl. Exhibits at p.11-12.

Plaintiff initially brought this complaint, naming Superintendent Robert Woods; Deputy Superintendent of Security, Darwin LaClair; Lieutenant Karin Vann; Corrections Officer Lawrence Brown; Upstate Correctional Facility; and the State of New York. (Dkt. No. 1). By stipulation dated September 5, 2006, Upstate Correctional Facility and the State of New York were dismissed as defendants. (Dkt. No. 35). The remaining defendants have submitted affidavits in support of their motion for summary judgment, together with the pertinent facility records, including a transcript of the plaintiff's disciplinary hearing. (Dkt. No. 45). Plaintiff was deposed on March 21, 2007, and excerpts of that deposition are attached to the Declaration of Gerald R. Rock as Exhibit B. (Dkt. No. 45). Defendants have also submitted a copy of the videotape of the incident involving inmate Davis

that led to the misbehavior report.

**3.      Failure to Protect**

An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.'" *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991)(citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id*. at 113. In order to establish an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. *Id*. at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id*.

In this case, plaintiff attempts to hold defendants Brown, Woods, and LaClair liable for the failure to protect plaintiff from the attack by inmate Davis.  Plaintiff seeks to hold defendants Vann, Woods, and LaClair liable for the attack by inmate Rosado.  Plaintiff's first problem in establishing a failure to protect claim is that he concedes that each attack was unprovoked and "sudden," making it difficult to find that the defendants "actually knew of" the risk to plaintiff.   Plaintiff claims that inmate Davis was upset because he did not want to be transferred, and thought that he could avoid transfer by starting a fight with plaintiff. Compl. ¶ 17.  In the second incident, plaintiff claims that inmate Rosado attacked plaintiff in a "jealous rage" because plaintiff was getting out of SHU and would not discuss giving some of his things to Rosado. Complaint ¶¶ 44-46.

### A. Defendants Woods and LaClair

Defendant Woods is the Superintendent of Upstate Correctional Facility and defendant LaClair is the Deputy Superintendent for Security at Upstate Correctional Facility. Both of these individuals are supervisory officials at Upstate. Plaintiff alleges that these two defendants were aware of a "risk" to plaintiff because he wrote letters to them informing them that he was in danger. The first incident occurred on October 4, 2005 and the second incident occurred on November 30, 2005. Although plaintiff states that he wrote to defendants Woods and LaClair prior to the first incident, a review of the letters that are attached to plaintiff's complaint shows that none of these letters were written prior to the first incident, and none of them would have alerted either defendant to a problem with a specific inmate.

Some of the letters attached to plaintiff's complaint were not addressed to either of these defendants. Two letters that were addressed to defendant Woods complaining about the disciplinary hearing that was held after the October 4 incident with inmate Davis. Compl. Ex. at 37-38, 41 (both dated October 18, 2005). Three letters were addressed to defendant LaClair. Compl. Ex. at 24-26, 42, 47-49. One letter was dated October 18, 2005 and complained about the conduct of the disciplinary hearing. Compl. Ex. at 42. One letter was dated October 7, 2005 and simply reported the incident involving Davis, but never stated that there was anything more to the incident than a sudden attack by Davis. Compl. Ex. at 47-49. The letter, in fact, *compliments* defendant Brown for helping plaintiff during the October 4 incident. *Id.* at 49. The third letter is dated November 30, 2005 and merely describes the November 30, 2005 incident with Rosado.

At the deposition, plaintiff testified that he had written "several" prior letters to defendants Woods and LaClair in which plaintiff "presented safety issues." Deposition Transcript (DT) at 9-10. Although plaintiff claimed in the deposition to have submitted those letters with his complaint, there

5

are no such letters attached.  In any event, at the deposition plaintiff stated that the concern for his safety was that he believed that Upstate Correctional Facility was an "inappropriate place to serve a parole violation."[3] (DT at 10).  Plaintiff also stated that the majority of the inmates at Upstate were serving longer sentences than plaintiff, "so there was a concern for safety." (DT at 11).  Even assuming that plaintiff wrote letters to these defendants containing the information that he alleged during the deposition, this would not have been sufficient to alert these defendants to a substantial risk of serious harm to plaintiff.

Defendant Woods has submitted a declaration in support of summary judgment.  In that declaration, defendant Woods states that in his experience, parole violators are generally at no greater risk than any other inmates. Woods Decl. ¶ 9.  Additionally, the fact that an inmate's sentence is shorter than that of another inmate does not signal increased danger for that inmate. *Id.* ¶ 10.  Defendant Woods also states that plaintiff's assertion that the inmates at Upstate are serving "longer" sentences is simply not true. *Id.* at 11.  Inmates are confined to Upstate to serve disciplinary sentences, and are not assigned based upon the length of their sentences. *Id.*

Defendant LaClair's declaration states that plaintiff sent him several letters, discussing "the aftermath" of the October 4 incident and the conduct of the subsequent disciplinary hearing. LaClair Decl. ¶ 8.  However, those letters expressed no concern for plaintiff's safety. *Id.*  Defendant LaClair specifically states that at no time prior to November 30, 2005 (the date of the second assault on plaintiff), did plaintiff ever advise defendant LaClair that plaintiff was concerned for his safety from Inmate Rosado. *Id.* ¶ 18.  None of the letters attached to the complaint, or those submitted by defendants would have alerted these defendants to a substantial risk generally, and certainly would not have alerted the defendants to a substantial risk from the inmates who eventually assaulted

---

[3] Plaintiff was serving a sentence for a parole violation.

plaintiff. Thus, plaintiff cannot sustain a claim that defendant Woods and defendant LeClair failed to protect him.

**B. Defendant Brown**

Plaintiff's complaint against defendant Brown appears to be that he did not react quickly enough when inmate Davis attacked plaintiff. It is not alleged that defendant Brown had any prior knowledge of any problem between plaintiff and inmate Davis or that defendant Brown had any prior knowledge of any danger to plaintiff at all. The complaint simply implies that defendant Brown stood by while plaintiff was being attacked. Compl. ¶¶ 18-19. Interestingly, however, in plaintiff's letter to defendant LeClair describing the incident of October 4, 2005, plaintiff complemented defendant Brown for assisting plaintiff. Compl. Ex. at 49. Plaintiff acknowledged the fact that defendant Brown was injured in the altercation and then stated "[m]y condolences to C.O. Brown, as ***I greatly appreciate him providing his security for my safety***." *Id.* at 48-49 (emphasis added). Plaintiff's attitude toward defendant Brown appears to have changed after the disciplinary hearing in which defendant Brown did not testify exactly as plaintiff anticipated.

Defendants have submitted the videotape of the October 4, 2005 incident as an exhibit. A review of the videotape shows that defendant Brown reacted almost immediately as soon as the voices in the cell began to get louder. The beginning of the videotape shows defendant Brown waiting outside of the cell, purportedly while Inmate Davis was getting ready to be transferred. As soon as the voices became louder, defendant Brown rushed into the cell, called for backup, and yelled at the inmates to "break it up." Brown Decl. Ex. C. The entire incident took less that one minute between the time the fight started and the time that the inmates were separated. *Id.*

**C. Defendant Vann**

Plaintiff alleges that defendant Vann was somehow responsible for a failure to protect plaintiff

from the assault by inmate Rosado. Plaintiff bases this absurd claim on the fact that defendant Vann found plaintiff guilty of the misbehavior and sentenced plaintiff to SHU. Plaintiff alleges that if defendant Vann had not found him guilty, then he would not have been in SHU and would not have been attacked by inmate Rosado. There is no evidence that defendant Vann was aware of any risk to plaintiff, let alone any substantial risk that she disregarded. As the hearing officer, defendant Vann has absolutely no control over in which cell and with which other inmate the plaintiff is subsequently placed. Vann Decl. ¶ 26-27. Defendant Vann specifically states that she had no role in placing plaintiff with inmate Rosado. Vann Decl. ¶ 27. Plaintiff clearly does not state a claim against defendant Vann for failure to protect. Thus, plaintiff's failure to protect claims must be dismissed as against all defendants.

**4.     Due Process**

Plaintiff alleges that defendant Vann denied plaintiff's due process rights during the disciplinary hearing that was held as a result of the October 4, 2005 incident. Defendants first argue that plaintiff's claim is not cognizable, and even if it were, plaintiff's claim fails on the merits.

**A. "Favorable Termination Rule"**

Under what has become known as the "favorable termination rule," articulated in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), if a determination favorable to a plaintiff in a section 1983 action would necessarily imply the invalidity of his conviction or sentence, his section 1983 claim is barred unless he can prove that his conviction has been reversed on direct appeal, or otherwise declared invalid by a state or federal court. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the rule in *Heck* to challenges made to prison disciplinary proceedings that deprive the inmate of good time credits. In that situation, plaintiff's recourse would be to challenge the conviction or disciplinary determination in state court, and if unsuccessful in state court, to file a

8

petition for habeas corpus in federal court. *See Heck, supra*.

In *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court held that a habeas corpus petition would be dismissed as moot if the petitioner were challenging his parole revocation, and he was released prior to a decision being rendered. The court held that because petitioner was challenging a parole revocation for which the petitioner had already completed his term of incarceration, and there were no "collateral consequences," there was no "case or controversy" for the court to decide. *Id*. In *Jenkins v. Haubert*, 179 F.3d 19, 23-29 (2d Cir. 1999), the Second Circuit discussed *Heck*, *Edwards*, and *Spencer* in finding that *Heck* does not apply when the inmate is **unable** to challenge the conditions of confinement through a petition for federal habeas corpus. *See id.* at 21.

While it is true that the inmate in *Jenkins* did not lose good time as part of his disciplinary sanction,[4] the Second Circuit has more recently held that in a "mixed sanctions" case, a plaintiff may proceed to challenge the sanctions that affected only his "conditions" of confinement without satisfying the "favorable termination rule" if the plaintiff is willing to forever forego any challenge to the length of his confinement. *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006), *cert denied*, 127 S. Ct. 3006 (2007). A "mixed sanction" case is one in which the plaintiff was sentenced to a period of SHU and loss of other privileges **in addition to the loss of good time**. The sanctions that do **not** affect the length of confinement are restrictive confinement in SHU and the loss of privileges and are referred to as "conditions of confinement."

In this case, although plaintiff has not **agreed** to forever forego any challenge to the length of confinement, it is clear from the holding in *Spencer v. Kemna*, that plaintiff would be forever **barred** from challenging the loss of good time since plaintiff has now been released from incarceration and

---

[4] Jenkins received a sanction of thirty days in "keeplock." 179 F.3d at 20-21. "Keeplock" is a form of confinement in which an inmate is confined to his own cell, deprived of participation in the normal prison routine, and denied contact with other inmates. *Id.* at 21 (citing *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989)).

any challenge to a loss of good time would be moot.[5]  Since plaintiff can no longer challenge the length of his confinement whether he agrees to or not, this court finds that based on the holding in *Peralta*, plaintiff may proceed with his section 1983 action, challenging the disciplinary sanctions that affected only his "conditions of confinement."

**B. Merits**

The law is well-settled that inmates subjected to disciplinary hearings that implicate due process protections are entitled to the following due process protections: (1) advance written notice of the charges, (2) the opportunity to call witnesses and present documentary evidence, and (3) a written statement of the evidence relied upon and the reasons for the determination. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  The inmate is entitled to an impartial hearing officer, and there must be "some" evidence to support the disciplinary determination. *Shell v. Brzenzniak*, 365 F. Supp. 2d 362, 377 (W.D.N.Y. 2005)(citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)("some" evidence standard); *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996)(hearing officer)).  The court in *Allen* stated, however, that disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts. *Allen*, 100 F.3d at 259 (citations omitted).  The hearing officer must not be "so insufficiently impartial as to present a 'hazard of arbitrary decision making.'" *Shell*, 365 F. Supp. 2d at 378 (quoting *Wolff*, 418 U.S. at 571).

Plaintiff in this case makes two basic due process claims against defendant Vann.  First, plaintiff claims that defendant Vann violated New York State Regulations when she did not complete the disciplinary hearing within the required fourteen days.  During his deposition, plaintiff

---

[5] Plaintiff's habeas claim was moot by the time that it was received by this court on January 5, 2006. Plaintiff was paroled on December 22, 2005. Complaint Ex. at p.11 (notation on disciplinary document that plaintiff was paroled on 12/22/05).  Plaintiff signed and gave his complaint to facility officials for mailing on December 21, 2005, the day before he was released. *See* Affidavit of Service attached to Dkt. No. 1).

specifically stated that the issue against defendant Vann was "timeliness." DT at 43. Plaintiff also alleges that defendant Vann was not impartial because she presided over inmate Davis's hearing and gave inmate Davis a lesser sentence than she gave plaintiff. Neither of plaintiff's claims have merit.

The court would first point out that federal constitutional standards, rather than state law or regulations, govern the requirements of procedural due process. *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990). Thus, the violation of state law does not necessarily rise to the level of a constitutional violation. The New York regulations governing disciplinary hearings provide that the disciplinary hearing or superintendent's hearing must be completed within fourteen days, following the writing of the misbehavior report, unless authorized by the Superintendent or his designee. N.Y. COMP. CODES R. & REGS. tit. 7, § 251-5.1(b). The regulation also requires that when an extension of the time is authorized, the record of the hearing should reflect the reason for the extension and the inmate should ordinarily be given notice of the reasons. *Id.*

Plaintiff in this case argues that defendant Vann did not complete the disciplinary hearing in the required time, did not obtain an extension, and did not notify plaintiff of the reasons for the delay. It has been held that the fact that the time deadlines were not followed does not necessarily rise to the level of a constitutional claim without a consideration of whether the delay was "reasonable." *See Shell*, 365 F. Supp. 2d at 376. In any event, the record in this case shows that defendant Vann ***properly obtained two extensions***, completed the hearing in the extended time limit, and notified plaintiff on the record of the disciplinary hearing that the extensions had been approved. Vann Decl. ¶¶ 14-17; Hearing Transcript[6] (HT) at p.15. The e-mails regarding the two extensions are attached to defendant Vann's declaration. Vann Decl. Exs. E, F. The extensions were requested in order to

---

[6] The disciplinary hearing transcript is attached to defendant Vann's declaration and is separately paginated. Vann Decl. Ex. C.

obtain defendant Brown's testimony and to accommodate defendant Vann's schedule. Vann Decl. ¶¶ 14-15. The final extension provided that the hearing was to be completed by October 24, 2005, and the hearing was completed on October 23. Vann Decl. ¶ 17 & Ex. F. Thus, there was no violation of any New York regulations or federal constitutional requirements. Plaintiff's statement to the contrary is not supported by the records or by his own statement at the hearing. When defendant Vann told plaintiff that she had requested an extension, he asked her the number of that extension, thus, he was well aware that an extension had been granted. HT at 15.

Plaintiff's claim of bias is similarly unsupported. Plaintiff claims that defendant Vann was biased because she presided over inmate Davis's disciplinary hearing and gave him a lighter sentence than plaintiff. Compl. ¶¶ 22, 30. Regardless of whether this would be proper, defendant Vann states that she did not preside over inmate Davis's hearing. Vann Decl. ¶ 30 & Ex. I. Hearing Officer Bullis conducted the disciplinary hearing against inmate Davis.[7] Vann Decl. Ex. I.

Plaintiff then alleges that defendant Vann retaliated against plaintiff for writing to her superiors, complaining about the hearing. Plaintiff makes this conclusory assertion because he states that defendant Vann "initially favored my defense," but then retaliated against plaintiff by punishing him more severely than Davis after plaintiff wrote to Vann's superiors. Compl. ¶ 22, 26. Any action taken by a defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the

---

[7] Although it is not relevant to this decision, it is noted that contrary to plaintiff's conclusory assertions, inmate Davis received a ***longer*** sentence than plaintiff. Vann Decl. Exh. I. Inmate Davis receivde ***four*** months of SHU confinement, together with a four month loss of privileges and two months recommended loss of good time, while plaintiff received only two months of SHU. *Id*. Exs, G, I.

conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiffs must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

Plaintiff seems to believe that the fact that he was not "the aggressor" in the altercation with inmate Davis, required defendant Vann to find plaintiff "not guilty" of any of the misbehavior charged. Plaintiff alleges that because defendant Vann found plaintiff guilty, she must have been retaliating against him for writing letters to her superiors.[8] There was no question that plaintiff was not the aggressor, however, defendant Brown testified that neither inmate complied with several orders to stop fighting. HT at 18-19, 24. Defendant Brown then testified that force had to be used on both inmates. HT at 21. Defendant Vann stated that she watched the videotape of the incident three times in addition to listening to defendant Brown's testimony.

A review of the hearing transcript as well as the videotape shows that defendant Vann had sufficient evidence to find plaintiff guilty of the misbehavior, notwithstanding that plaintiff was not the aggressor during the incident. Defendant Vann stated during the hearing that she watched the videotape three times. HT at 30. The videotape shows that defendant Brown ordered the inmates to "break it up" three times. Defendant Brown testified at the hearing that neither inmate complied with the order. HT at 18. This is certainly "some" evidence that plaintiff was guilty of the misbehavior

---

[8] It is interesting to note that although plaintiff claims that defendant Vann's attitude toward plaintiff changed after he wrote letters, it is really plaintiff's attitude toward this situation that changed after defendant Brown did not testify the way that plaintiff expected. The court notes that at the beginning of the hearing, plaintiff stated that defendant Brown was "helpful toward me in separating inmate Davis away from me." HT at 10. In the complaint, however, plaintiff now claims that defendant Brown stood by while plaintiff was assaulted by inmate Davis.

charged. The fact that later the charge of "fighting" was reversed does not change this court's finding. Thus, plaintiff cannot show that the hearing disposition was the result of retaliation for plaintiff writing to defendant Vann's superiors.

## CONCLUSION

Based on all the records reviewed by this court, it is the court's finding that none of the defendants failed to protect plaintiff from the two attacks that he suffered. Both of the inmate assaults were sudden and unexpected, and plaintiff has not shown that defendants were deliberately indifferent to a substantial risk of harm to plaintiff. None of the defendants had any advance notice that plaintiff was at risk. Plaintiff's claim that he was at risk simply because he was a parole violator who was serving a lesser sentence than other individuals at Upstate Correctional Facility is simply unsupported by any evidence. It is also clear that defendant Brown did *not* stand by while plaintiff was attacked, and plaintiff's own statements contemporaneous to the incident refute his claim.

With respect to plaintiff's disciplinary hearing, the court finds that he received all the process to which he was due, and there is absolutely no showing that defendant Vann was biased against him. Finally, there was sufficient evidence to find plaintiff guilty of the misbehavior, and plaintiff cannot show that the guilty finding was in any way made in retaliation for plaintiff's letters of complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendants' motion for summary judgment (Dkt. No. 45) is **GRANTED** and the complaint is **DISMISSED IN ITS ENTIRETY.**

Dated: March 10, 2008

Thomas J. McAvoy
Senior, U.S. District Judge

14